IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

AMERICAN GENERAL LIFE INSURANCE COMPANY,

    Plaintiff,                                                 Case No. 10-C-0279

    v.

CAROL SKINNER, individually and as Personal
Representative of the ESTATE OF RICHARD D.
BOSTWICK, MARY HAMMER OF PROFESSIONAL
GUARDIANSHIPS, INC. as guardian of HOLLY
BOSTWICK, a minor, THOMAS WALSH as guardian *ad
litem* of HOLLY BOSTWICK, a minor, and
LEWIS MURRAY, as Personal Representative of the
ESTATE OF BARBARA K. BOSTWICK,

    Defendants.

**DECISION AND ORDER ON MOTIONS
FOR SUMMARY JUDGMENT**

        Plaintiff/Stakeholder American General Life Insurance Company ("American General") brought this action for interpleader relief against the various claimants for a $250,000 death benefit payable under the policy of insurance American General issued on the life of Richard Bostwick. Richard was shot and killed by Barbara Bostwick, his estranged wife, who then took her own life, leaving behind the couple's minor daughter H. B. Confronted by conflicting claims for the proceeds of the policy by the guardian for H. B., Richard's mother Carol Skinner, Barbara's estate, and Richard's estate, American General commenced this action pursuant to 28 U.S.C. § 1335, deposited the proceeds with the Clerk, and requested the Court to determine and declare the rights of the respective claimants. The case is before me on stipulated facts and cross motions for

summary judgment. For the reasons that follow, summary judgment will be granted in favor of the guardian for H. B. All other motions are denied.

**BACKGROUND**

Richard Bostwick married Barbara Bostwick on September 16, 2003. (Stipulated Facts, "SF", Dkt. 66, ¶ 1.) They had one child, a girl, hereafter identified by her initials H. B., who was born in 2004. (SF ¶ 2.) On November 11, 2004 American General issued Richard Bostwick life insurance Policy Number Policy, No.: YMD7008671 ("the Policy") in the amount of $250,000.00 (the "Proceeds"). (SF ¶¶ 3-4.) Richard designated his wife, Barbara, as the beneficiary and his daughter as a contingent beneficiary on the insurance application. (SF ¶ 6.) Sometime thereafter the marital relationship soured.

On July 1, 2008, Richard began dating Dionne Alexander. (9/1/10 Aff. of Dionne Alexander, Doc. # 66, Ex. E, ¶ 2.) On August 13, 2008 Richard Bostwick was physically removed from the marital home by law enforcement officers after Barbara alleged that he physically abused her. (SF ¶ 7.) On August 19, 2008 Barbara filed for divorce. (SF ¶ 9.) Based on Barbara's complaint, Richard was charged with disorderly conduct as a domestic violence offence on August 29, 2008, but the charges were dismissed without prejudice on the prosecution's motion on November 6, 2008. On October 10, 2008, Richard was charged with sexual abuse of H. B. based on Barbara's complaint. That charge was also dismissed on motion of the prosecution on May 28, 2009. An earlier decision substantiating the charge that Richard had sexually abused H. B. was reversed by a staff attorney for the county on August 17, 2009.

On September 5, 2008, shortly after the divorce action was commenced, a Family Court Commissioner issued a temporary order that set forth the parties rights and responsibilities during the pendency of the action. (SF ¶ 12, Ex. A.) The order specifically stated that Richard and Barbara "shall maintain all life and disability insurance policies, and may make no changes in beneficiaries or coverage except by agreement of the parties." (*Id.*) That provision of the order remained in effect throughout the proceeding, which was still pending at the time of Richard's death.

On the afternoon of November 21, 2008 Richard underwent lap band surgery, a somewhat risky procedure designed to aid in weight loss. (SF ¶ 17.) Prior to the surgery, Ms. Alexander, who had previously gone through her own divorce, spoke with Richard about changing the beneficiary of his life insurance policy. (9/1/10 Alexander Aff., doc. # 66, Ex. E., ¶¶ 6-7.) Alexander also had a life insurance policy through American General. She explained to Richard how she had changed her beneficiary to a third party to receive the life insurance proceeds as trustee for her daughter because she understood that, as a minor, her daughter was too young to receive the proceeds directly. (*Id.* at ¶ 7.) About a week before Richard's scheduled surgery, Alexander asked Richard whether he had changed the beneficiary of his life insurance policy so that Barbara was removed. When he said he had not, Ms. Alexander helped him find the telephone number and was present when he called American General and asked how to affect the change. Ms. Alexander states that Richard then obtained the change of beneficiary form and discussed with her who a suitable beneficiary would be. According to Ms. Alexander, she advised Richard that she did not want to be the beneficiary as she felt it more appropriate that he name his mother. (*Id*. at ¶¶ 10-11.) On the morning of his surgery, Ms. Alexander again asked Richard if he had changed the beneficiary. He

3

told her he had not but would do so that day. According to Ms. Alexander, Richard later confirmed in subsequent conversations that he had faxed a change of beneficiary designation to American General prior to his surgery. (*Id.* at ¶ 12.)

American General did indeed receive a Change of Beneficiary form from Richard on the morning of November 21, 2008. On the Change of Beneficiary form Richard listed his mother as his primary beneficiary. He also checked a box on the form for "Minor Beneficiary Clause – Trustee for Children" and listed his daughter's name in the blank titled "Name of Trust/Trustee." The Change of Beneficiary form Richard signed states: "the undersigned contract owner hereby revokes any previous beneficiary designation and any optional mode of settlement with respect to any death benefit proceeds payable at the death of the Insured/Annuitant."

On December 1, 2008 American General mailed a letter to Richard's apartment. The letter indicated that American General was unable to complete Richard's requested change of beneficiary because he had requested a minor beneficiary trustee clause but had failed to provide the name of the trustee, and the full name and date of an established trust. (SF ¶¶ 20-21; Compl. Ex. C.) Richard never responded to the letter, and the requested change was never made on American General's records.

In a second affidavit, Ms. Alexander states that she was staying with Richard at his apartment approximately three days out of the week during the months of November and December of 2008, and that she was not aware of Richard receiving a letter from American General during that time. Ms. Alexander states she used the same address as her mailing address and would check incoming mail. (9/22/10 Aff. of Dionne Alexander, ¶¶ 2-3.) Ms. Alexander further states that Richard never discussed receiving a letter from American General indicating his change of

4

beneficiary designation was inadequate. If Richard had received such a letter, Ms. Alexander states that she is confident that he would have discussed it with her. (*Id.*, ¶ 8.)

On August 28, 2009, Barbara Bostwick shot Richard multiple times with a .357 caliber handgun outside his home. (SF ¶ 27.) He was taken to the hospital where he died that same day. Barbara was found a short distance away with a self-inflicted gunshot wound to the chest which was also fatal. (SF ¶ 28.) Richard died intestate with his daughter H. B. his sole heir and claims against his estate amounting to more than $80,000. (SF ¶¶ 30, 31.) The guardian for H. B. has received for H. B.'s benefit approximately $300,000 in proceeds from insurance on Barbara's life and her retirement savings plan. The guardian has received an additional $25,000 for H. B.'s benefit from a separate Met Life policy on Richard's life. (SF ¶ 29.)

At this point, there are essentially three competing claimants to the proceeds of Richard's American General life insurance policy. Carol Skinner, Richard's mother who is a resident of Iowa, claims that she is individually entitled to the proceeds based on the change of beneficiary form Richard faxed to American General on November 21, 2008, in which he expressly named her as his intended primary beneficiary. Alternatively, Carol Skinner, as the personal representative of the estate of Richard D. Bostwick, argues that Richard's attempt to change the beneficiary of his policy succeeded only in revoking the previous beneficiaries so that there was no named beneficiary at the time of his death. In the absence of a named beneficiary, the estate argues that the proceeds must go to the estate. Finally, Professional Guardianships, Inc., the court-appointed guardian of H. B., now joined by Lewis Murray, the personal representative of Barbara's estate, argues that H. B. is entitled to the proceeds as the contingent beneficiary under the policy because Richard's effort to change the beneficiary to his mother was either ineffective or void. Alternatively,

Professional Guardianships, along with Barbara's estate, argues that a constructive trust should be placed over the proceeds for the benefit of H. B.

**ANALYSIS**

**I. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *McNeal v. Macht,* 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. Change of Beneficiary

There is no dispute that if Richard's original beneficiary designation was still in effect on the date of his death, H. B. would be entitled to the proceeds of the American General Policy. This is because H. B. was named as the contingent beneficiary and Barbara, the primary beneficiary, is disqualified under the so-called slayer's rule by reason of her actions causing Richard's death, as is her estate. *See Giles v. California*, 554 U.S. 353, 384 (2008) ("The common law, for example, prohibits a life insurance beneficiary who murders an insured from recovering under the policy."); *Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 475-76 (7th Cir. 1999) ("The principle that no person shall be permitted to benefit from the consequences of his or her wrongdoing has long been applied to disqualify murderers from inheriting from their victims, whether the route of inheritance is a will, an intestacy statute, or a life insurance policy."). The parties agree that Wisconsin law applies, and although no Wisconsin case appears directly on point, "Wisconsin courts have long been committed to the principle that a murderer should not be permitted to profit from his or her crime." *In re Estate of Hackl*, 231 Wis. 2d 43, 48, 604 N.W.2d 579, 582 (Ct. App. 1999). Thus, if the original beneficiary designation remains in effect, the proceeds should be paid to H. B.'s guardian.

Richard's mother and his estate argue, however, that the original designation was no longer in effect at the time of Richard's death because he effectively changed it in November 2008 when he submitted to American General a Change of Beneficiary form. Ms. Skinner argues that Richard effectively named her as the new primary beneficiary, whereas the estate claims that he simply revoked the previous beneficiaries.

Of course, any change by Richard of the beneficiary of his life insurance policy during the pendency of the divorce proceedings was in violation of the temporary order entered by the Family Court Commissioner. That order, to repeat, expressly mandated that the parties "maintain all life and disability insurance policies, and may make no changes in beneficiaries or coverage except by agreement of the parties." (SF ¶ 12, Ex. A.) The Wisconsin Supreme Court has held that when a spouse changes the beneficiary of a life insurance policy during the pendency of a divorce proceeding in violation of a temporary order and then dies, a constructive trust may be an appropriate remedy where equitable considerations warrant such relief. *Wilharms v. Wilharms*, 93 Wis. 2d 671, 680-81, 287 N.W.2d 779, 784 (1980). *Wilharms* rejects the notion, however, that the violation by itself renders the change void. *Id.* Thus, I must first determine whether Richard's attempted change of beneficiary was effective. Only if his attempt to change the beneficiary was effective will the question of whether a constructive trust should be imposed arise.

In arguing that the attempted change was effective, Ms. Skinner and Richard's estate rely on Section 632.48(1)(b) of the Wisconsin Statutes (2007-08). As applicable here, that section states: "as between beneficiaries, any act that unequivocally indicates an intention to make the change is sufficient to effect it." In *Empire General Life Ins., Co. v. Silverman,* 135 Wis.2d 143, 157, 399 N.W.2d 910, 916 (1987), the Wisconsin Supreme Court applied this section and held that oral instructions by an insured to his attorney that he wanted to change the beneficiary on his life insurance policy so that the proceeds would "go for the benefit of my family" was enough to effectuate a change even though no change of beneficiary form was completed and no specific beneficiary identified before the insure died. Ms. Skinner and Richard's estate argue that the evidence of Richard's intent is even stronger in this case because he actually completed a change

of beneficiary form and faxed it to American General. Ms. Skinner argues that Richard's signing and faxing the change of beneficiary form to American General manifests his unequivocal intent to name her as the primary beneficiary. Richard's estate, on the other hand, argues that only Richard's intent to change the beneficiary designation is unequivocal. The identity of the intended beneficiary, the estate argues, is not clear and thus the Court should determine that the estate is to receive the proceeds as the policy directs when no beneficiary survives the insured.

The intent underlying an act cannot be determined by viewing the act in isolation, however. It must be viewed in the context of the surrounding circumstances. In *Silverman* the original beneficiary was the comptroller of the insured's automobile dealership. Prior to his death, the insured had been attempting to negotiate a change of beneficiary with the comptroller while under the mistaken impression that the comptroller was the owner of the policy. On the day he was hospitalized for treatment of colon cancer, the insured told his attorney that he wanted the policy proceeds to go for the benefit of his family and instructed him to take all steps necessary to effectuate the change. The insured died the following day before he could complete the change of beneficiary forms. Given the insured's clear expression of intent to benefit his family, instead of the comptroller of his business, and his attorney's inability to obtain and prepare the form before his death, the Court held that his intent to remove the comptroller as beneficiary was unequivocal.

The facts of this case differ significantly. First, American General sent Richard a letter within ten days of receiving his change of beneficiary informing him that it was unable to complete his request until he cleared up the confusion created by his checking the box indicating Minor Beneficiary Clause - Trustee for Children without indicating the name of the trustee and the full name and date of the trust. Despite this fact, Richard took no action to clarify his intent over the

9

following ten months. Thus, unlike the insured in *Silverman*, Richard had plenty of time to make his intent clear. And also unlike *Silverman*, the change of beneficiary Richard was attempting to accomplish was in direct violation of a court order. For this reason alone, Richard may have been reluctant to follow through on his effort.

Although Ms. Skinner and Richard's estate argue that there is no evidence Richard ever received the letter from American General, it is well established under Wisconsin law, as in other states, "that the mailing of a letter creates a presumption that the letter was delivered and received." *State ex rel. Flores v. State*, 183 Wis.2d 587, 612, 516 N.W.2d 362, 370 (1994) (citing 4 Wigmore, Evidence (2d ed.) § 2153; 1 Wigmore, Evidence (2d ed.) § 95). Ms. Alexander's assertion that she was staying at Richard's apartment three days a week during November and December and that she would check incoming mail falls far short of rebutting the presumption that Richard actually received the letter on one of the other four days of the week. And her belief that he would have discussed it with her if he had changed his mind is not enough to render the evidence of his intent unequivocal.

More importantly, it appears from Ms. Alexander's affidavit that the uncertainty over Richard's intent exists even if Richard did not receive American General's letter requesting clarification. According to Ms. Alexander, she explained to Richard that H.B. could not receive the proceeds of the policy because she was a minor. She then told him how, when her relationship with her ex-husband began to sour, she named a third person as beneficiary of her own policy "to in effect act as trustee" for her daughter. (9/1/10 Alexander Aff. ¶¶ 7, 11.) It was at that point that Richard then named his mother as primary beneficiary but added his daughter's name and checked the box for Minor Beneficiary Clause - Trustee for Children. (Compl. Ex. B.) If this is true, then

10

it would appear that Richard may have thought he was naming his mother to act as trustee for his daughter. If he actually intended to exclude his daughter out of resentment for his wife, it would have made no sense for him to list her at all.

Thus, regardless of whether or not Richard received the letter requesting clarification from American General, his intent in faxing the change of beneficiary form was not unequivocal. It therefore did not effect a change in beneficiary, and H.B. is entitled to the proceeds as the contingent beneficiary under the original designation. Since she is a minor, the proceeds must be paid to Professional Guardianships, Inc. for her benefit.

**III. Constructive Trust**

The Court would reach the same result even if Richard's attempt to change beneficiaries had been effective. As noted above, the Wisconsin Supreme Court held in *Wilharms* that a constructive trust may be imposed on the proceeds of an insurance policy when a spouse changes the beneficiary of a life insurance policy during the pendency of a divorce proceeding in violation of a temporary order. A constructive trust is "an equitable device created by law to prevent unjust enrichment, which arises when one party receives a benefit, the retention of which is unjust to another." *Wilharms*, 93 Wis. 2d at 678. In order to impose a constructive trust on property "the legal title must be held by someone who in equity and good conscience should not be entitled to beneficial enjoyment." *Id.* at 679. In addition, title must have been obtained "by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." *Id.* There is no requirement, however, that the person holding title to the property at the time the trust is sought be the wrongdoer: "Where a person

11

holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee (by means of a constructive trust) unless the transferee is a bona fide purchaser." *Richards v. Richards*, 58 Wis.2d 290, 298, 206 N.W.2d 134, 138 (1973) (quoting A. Scott, 5 Laws Of Trusts, p. 3444 (3d ed. 1967)). Neither Ms. Skinner, nor Richard's estate would be considered bona fide purchasers here.

Ms. Skinner and Richard's estate argue, however, that *Wilharms* does not support imposition of a constructive trust in this case on a motion for summary judgment. Indeed, they note that in both *Wilharms* and *Prince v. Bryant*, 87 Wis. 2d 671, 287 N.W.2d 779 (1980), the Wisconsin Supreme Court reversed the judgments of lower courts that had imposed constructive trusts under similar circumstances without a full trial. In both cases, the Court held that the violation of a temporary order of a family court in a divorce proceeding by itself does not constitute sufficient grounds to impose a constructive trust. *See Wilharms*, 93 Wis. 2d at 680-81; *Prince*, 87 Wis. 2d at 673. In *Prince*, the Court went so far as to state that "[t]he extent to which a constructive trust should be imposed upon the insurance proceeds can only be determined after an evidentiary hearing and a careful and equitable consideration of all relevant factors." 87 Wis. 2d at 673. Thus, Ms. Skinner and Richard's estate argue that a constructive trust could not be imposed without a trial.

Their reading of both *Wilharms* and *Prince* is overly broad. While the Court did hold that the lower courts had erred in imposing a constructive trust without an evidentiary hearing in both of those cases, it did not hold that an evidentiary hearing must always be held before a constructive trust is imposed. The facts of this case differ from both *Prince* and *Wilharms* in two ways that make an evidentiary hearing unnecessary. First, in both *Prince* and *Wilharms* the violation of the temporary order by the deceased was less culpable than here. More importantly, however, in those

cases there were unresolved disputes over facts that had a direct bearing on the equitable considerations that are to guide a court in determining whether an equitable trust should be informed. The parties have revealed no such dispute here.

In both *Prince* and *Wilharms*, the temporary orders entered by the family court at the inception of the divorce made no mention of insurance. The orders simply prohibited either party from disposing of marital assets other than as necessary in the ordinary course of running the household or business. Although *Prince* had held that such language was broad enough to prohibit a party from changing the beneficiary of a life insurance policy, 87 Wis. 2d at 671, the Court acknowledged both in that case and in *Wilharms*, that it was possible that the decedent in each case had acted innocently in changing the beneficiary of his life insurance policy. 93 Wis. 2d at 679-80. Here, by contrast, the temporary order entered in the divorce action stated unequivocally that the parties "may make no changes in beneficiaries or coverage except by agreement of the parties." (SF ¶ 12, Ex. A.) In the face of the clear language of the temporary order, Richard's conduct in attempting to change the beneficiary of his life insurance policy was clearly wrongful.

But this case also differs from *Prince* and *Wilharms* in terms of the equitable factors that inform a court's decision to impose a constructive trust and, in particular, the party for whose benefit a constructive trust is sought. In *Prince* the decedent's estranged wife sought to impose a constructive trust for her benefit over insurance proceeds that were payable under the changed beneficiary designation to his sister. The divorce action that she commenced would have terminated the wife's brief, childless, second marriage to the decedent which was of questionable validity because it occurred within six months of her previous divorce. 87 Wis. 2d at 665. In *Wilharms* the estranged wife sought to impose the trust over proceeds payable to the decedent's

13

parents. The parents alleged that their son had been driven to kill himself by the conduct of his estranged wife. 93 Wis. 2d at 674.

In both cases, the Court noted that the temporary orders that were violated, perhaps innocently, were intended only to maintain the status quo pending a final judgment of divorce. They were not intended to be the ultimate determination of the property rights of the parties, and had the cases gone to judgment, the family court might have awarded the policies to the husband. Indeed, in *Prince* the parties had already entered into a final stipulation before the husband died which, though not yet approved by the family court, awarded the wife no maintenance and divided the marital estate without mention of the husband's insurance policy. 87 Wis. 2d at 666. In view of the unresolved factual issues in those cases, the Court held that the lower courts erred in imposing a constructive trust for the benefit of the surviving spouses based solely on the deceased spouses' violation of the temporary order. On remand, the *Wilharms* Court gave the lower court specific directions concerning the factors it was to consider:

> Consideration must be given to the ultimate distribution of the marital estate after the death of the insured spouse. This would include property obtained by the wife by will, intestacy, other life insurance, rights of survivorship, or any other means. The court should also consider the debts incurred during marriage for which the surviving spouse remained liable. Another potential factor is the likelihood that the deceased spouse would have been liable for maintenance payments. The surviving spouse's conduct prior to the commencement of the divorce action would be relevant as well. Ordinarily, the welfare of any children born of the marriage who were intended to have benefited from the proceeds of the policy should also be considered. In this case, however, the action was not brought on behalf of the child so this factor would not be relevant.

*Id.* at 681 (footnote omitted).

In this case, by contrast, the constructive trust, if Richard's attempted beneficiary designation had been effective, would be sought for the benefit of the minor child of the parties who

14

unquestionably played no role in the tragedy that unfolded around her. None of the factors the Court directed the lower courts to consider in *Prince* or *Wilharms* are either at issue or relevant here. And Richard's conduct in attempting to change the beneficiaries for his policy in direct violation of the temporary order is more culpable than either of the decedents in those cases. Neither of the other contenders for the proceeds of the policy have even suggested, let alone offered evidence to support, any facts that would outweigh the equities favoring H. B. Based on the undisputed material facts, this case would cry out for the imposition of a constructive trust if Richard's attempt had been effective. The result is therefore the same whether or not Richard's attempted change of beneficiary was effective.

## CONCLUSION

For the reasons set forth above, the Court concludes that Richard Bostwick failed to effectively change his original beneficiary designation for his American General life insurance policy. Because his wife Barbara Bostwick, the primary beneficiary, is disqualified, the proceeds of the policy are payable to the couples' daughter, H. B., as contingent beneficiary. And because H. B. is a minor, the proceeds must be paid to her guardian, Professional Guardianships, Inc., for her benefit. Even if Richard's attempt to change the beneficiary had been effective, the result would be the same since in that event the Court would impose a constructive trust over the proceeds for H. B.'s benefit. Accordingly, the motion for summary judgment of Professional Guardianships, Inc., and Lewis Murray, as personal representative of the estate of Barbara Bostwick, is granted, and all other motions are denied. The Clerk is directed to enter judgment declaring H. B. to be the beneficiary of the proceeds of the policy and to transfer the entire amount of the proceeds deposited

with the Court by American General Life Insurance Company, together with any interest that has accrued, to Professional Guardianships, Inc., for the benefit of H. B.

Dated this   4th   day of February, 2011.

                                                 s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge